WILSON v. KNOWLES.

(Circuit Court of Appeals, Second Circuit.   April 28, 1914.)

No. 26.

1. APPEAL AND ERROR (§ 997*)—PRESUMPTIONS TO SUPPORT JUDGMENT—DIRECTED VERDICT.

Where both parties moved for a directed verdict, and, upon a direction for plaintiff, defendant made no further motion, they were concluded by the finding of any facts supporting the direction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4023, 4024; Dec. Dig. § 997.*]

2. CORPORATIONS (§§ 252, 261*)—STOCKHOLDERS—LIABILITY AS GUARANTORS—CONDITIONS PRECEDENT.

The three organizers and sole stockholders in a corporation, one of whom was plaintiff's brother, in consideration of plaintiff's indorsement of the corporation's note for the amount borrowed from a bank as working capital, guaranteed to hold him harmless to the extent of one-third each of the amount borrowed; the instrument further providing that the entire capital stock was delivered to plaintiff, and was to be returned when he was relieved of his obligation as an indorser. *Held* that, construing the agreement in the light which the situation afforded as to the intent of the parties, plaintiff was not required to exhaust his remedies against the corporation or against the collateral before suing on the guaranty, and the fact that subsequent to the agreement the other stockholders assigned their stock to plaintiff's brother in consideration of his agreement to relieve them from liability under the guaranty imposed upon plaintiff no duty of resorting to the corporation or the collateral.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1016–1023, 1068–1075, 2268–2271; Dec. Dig. §§ 252, 261.*]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error to review a judgment of the District Court, Southern District of New York, in favor of defendant in error, who was plaintiff below. The action was brought upon a written contract executed by defendant Henry H. Wilson, by his brother, and by H. H. Knowles, a brother of the plaintiff. This agreement provided that:

"In return for [plaintiff's] indorsement on a note of the Santo Sales Company of New York for $25,000 for six months received by [them] this day they guarantee to hold [plaintiff] harmless to the extent of one-third each of the above amount; the understanding being that he will again indorse a note for a like amount, or less, as they may desire, at the expiration of said six months for another like period, their guaranty under this paper to be continued in that event."

The document further states that there is handed plaintiff by the three duly indorsed certificates for the entire capital stock of the Santo Sales Company, which are to be returned when plaintiff is relieved of his obligation as an indorser.   Affirmed.

J. McG. Goodale, of New York City, for plaintiff in error.

G. N. Hamlin, of New York City, for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LACOMBE, Circuit Judge. [1] Both sides, at the close of the case, asked the court to direct a verdict, and, upon direction in favor of plaintiff, defendant made no further motion. They are therefore concluded by the finding of any facts which support the direction. Sena v. American Turquoise Co., 220 U. S. 497, 31 Sup. Ct. 488, 55 L. Ed. 559.

[2] The three persons signing the contract organized the Santo Company to carry on the business of selling vacuum cleaners. Plaintiff was in no way connected with that business or interested therein. The note made by the Santo Company was duly indorsed by plaintiff, and was discounted at the National Copper Bank; the proceeds going to the company. About three months thereafter the three disagreed as to the conduct of the business. Defendant and his brother withdrew and assigned their stock to H. H. Knowles, in consideration of his agreeing to relieve the Wilsons from liability to his brother under the guarantee in suit. Of this disagreement, withdrawal, and assignment plaintiff was not at the time informed. The company failed to take up the note when it came due on April 26, 1910, whereupon it was taken up by plaintiff, who gave the bank $12,500 in cash and his personal note at six months for $12,500.

The contention of plaintiff in error is that the court erred in directing a verdict because plaintiff did not prove that he had exhausted whatever remedies he might have against the maker of the note (the Santo Company) and against the stock which had been deposited as collateral. The theory is that the words "hold harmless" imported merely a guaranty against loss and not a guaranty that the note would be paid at maturity. Standing alone they might be thus construed, under the authorities; but they do not stand alone, and this written instrument, like most written instruments, must be interpreted in the light which the situation affords as to the intent of the parties who executed it. The respective rights and obligations of the parties to this action were settled by the contract, and were not changed by any subsequent agreement between the two Wilsons and plaintiff's brother, not entered into with plaintiff's assent, or even with his knowledge.

The contract to hold harmless was quite well described in one of defendant's letters (October 26, 1909) as "a personal matter" between plaintiff and the three, in which the Santo Company was not concerned. The three wished to go into business, and decided to do so as the Santo Company, of which they were sole stockholders. They could not do so without money ($25,000) as working capital. The bank apparently would not lend them that sum on what they had to offer, viz., the Santo Company note, their stock as collateral, and their individual credits. To obtain this money they got the plaintiff to indorse a note of the company for that amount, on which note, when thus indorsed, the bank was willing to loan the money. Plaintiff got nothing by the transaction; he merely obliged them by so doing. Under these circumstances we think the words "guarantee to hold harmless" should be given the broadest construction of which they are susceptible. What was meant was that his indorsement, given merely as a friendly act to accommodate the three, should not come back to trouble him; that they would so provide for the note which he had indorsed that

such indorsement would not harm him in any way. It was not the intention of the parties that, in return for his kindness, he should first be put to the trouble of suing the company to get back the money he had to pay, and to the further trouble of selling the collateral to try and realize something on it. The promise that the collateral was to be returned to the persons who put it up, "when he was relieved of his obligation as an indorser," seems to indicate that the true construction of the contract is that by it this defendant was obligated to see to it that one-third of the note was taken care of. When he shall have done this he will be entitled to receive from plaintiff the one-third of the stock which he put up as collateral to secure such obligation.

The judgment is affirmed.